IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 12, 2017 Session

**JERRY BRANDON PHIFER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1782    Cheryl A. Blackburn, Judge**

_____

**No. M2017-00579-CCA-R3-PC**

_____

Petitioner, Jerry Brandon Phifer, appeals the denial of his petition for post-conviction relief from his convictions for aggravated burglary and theft of property valued over $1000. Petitioner argues that he received ineffective assistance of counsel and that his convictions were based on evidence obtained in violation of the Fourth Amendment of the United States Constitution. After a review of the record and the briefs of the parties, we determine Petitioner has failed to establish that he received ineffective assistance of counsel and Petitioner's Fourth Amendment claim is waived. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Wesley Clark, Nashville, Tennessee, for the appellant, Jerry Brandon Phifer.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas S. Bolduc, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Davidson County Grand Jury indicted Petitioner for one count of aggravated robbery, five counts of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, and five counts of theft of property. Prior to trial, Petitioner filed a motion to suppress evidence that was obtained as result of a GPS tracking device being placed on Petitioner's car without a warrant. The motion was

denied. Counts One (aggravated robbery) and Two (aggravated burglary) of the indictment were severed, and a jury trial commenced on those charges on February 4, 2013. The jury convicted Petitioner of Counts One and Two, and the trial court imposed a total effective sentence of forty-five years. Petitioner appealed his convictions, arguing that the warrantless placement of the GPS device on his car was unlawful. *See State v. Jerry Brandon Phifer*, No. M2013-01401-CCA-R3-CD, 2014 WL 4698499 at \*1 (Tenn. Crim. App. Sept. 23, 2014), *no perm. app. filed.*

Before this Court ruled on Petitioner's appeal on Counts One and Two, the State proceeded to trial on Counts Eleven (aggravated burglary) and Twelve (theft of property valued over $1000) of the indictment. In the meantime, Petitioner changed his representation. For the trial and appeal on Counts One and Two, an attorney, whom we will refer to as "trial counsel," represented Petitioner. On the remaining counts, an attorney from the 20th Judicial District Public Defender's Office, whom we will refer to as "plea counsel," represented Petitioner. Minutes before the trial on Counts Eleven and Twelve was to begin, the State offered Petitioner a plea deal. The terms of the deal were that it was to be an open plea to Counts Eleven and Twelve as charged for a sentence concurrent with Petitioner's sentence in Counts One and Two. After a short discussion with plea counsel, Petitioner pled guilty in Counts Eleven and Twelve on January 13, 2014.

At the plea hearing, the trial court told Petitioner to "feel free" to consult with his attorney if he had any questions. The trial court went on to say, "Ask me to explain anything. If I say something you don't understand about this agreement or . . . if it's something that's different than what you thought it was, we need to clear that up today." The trial court explained that the plea was an open plea where she would be determining the length of the sentence and whether the sentences in Counts Eleven and Twelve would be concurrent or consecutive to each other. The trial court went on to tell Petitioner that his sentences in Counts Eleven and Twelve would be concurrent with his forty-five-year effective sentence on Counts One and Two. Petitioner acknowledged that he understood the agreement.

The trial court stated, "I want to make sure you understand this. You're not waiving your appellate rights on that case, the other case. But you are waiving any on this case, any rights to complain about the stop or the statement. Do you understand that?" Petitioner replied, "Yes ma'am, on this case." The trial court reiterated that this plea agreement did not affect Petitioner's appeal in Counts One and Two. After some discussion, the trial court informed Petitioner again, "If you were to win your appeal on that forty-five years, this one would stay in place." Petitioner replied, "Yeah, I understand that."

After some more discussion about whether the State would pursue more convictions if the State lost the appeal, the trial court asked Petitioner, "What do you want to do?" Petitioner stated, "I'll agree with the plea bargain. . . . We're going to go with the offer." Again, the trial court reiterated that even if Petitioner won his appeal on Counts One and Two, his convictions based upon his pleas to Counts Eleven and Twelve would stand. Petitioner again responded, "Yes ma'am." The trial court inquired if Petitioner spoke to his attorneys about the pleas and if Petitioner had read his plea agreement. Petitioner indicated affirmatively. When asked about giving up his rights, Petitioner stated, "I understand I can't appeal this right here." Petitioner indicated that plea counsel and her co-counsel had done everything that he wanted them to do. The trial court then went over the rights that Petitioner would be giving up by pleading guilty, and Petitioner indicated that he understood. The trial court then determined that Petitioner's pleas were voluntary and factually based and found Petitioner guilty. Later, the trial court sentenced Petitioner to thirteen years in Count Eleven and twelve years in Count Twelve. The sentences were ordered to run consecutive to one another and concurrent with Petitioner's sentences in Counts One and Two.

On September 23, 2014, this Court reversed the trial court's denial of Petitioner's motion to suppress the evidence obtained from the use of the GPS tracking device and remanded the case for a new trial. *See Jerry Brandon Phifer*, 2014 WL 4698499 at *1. On remand, the trial court dismissed Counts One and Two and vacated the accompanying sentences. However, the trial court's order, which trial counsel also signed, stated that the sentences on Petitioner's "voluntary plea" in Counts Eleven and Twelve remained in effect.

Petitioner filed a petition for post-conviction relief, arguing that plea counsel provided ineffective assistance by advising Petitioner to enter guilty pleas while his appeal was pending and failing to file an appeal of Petitioner's sentences resulting from his guilty pleas; that trial counsel provided ineffective assistance by signing the agreed order which characterized Petitioner's pleas as "voluntary" without consulting Petitioner and when he did not represent Petitioner on those pleas; and that Petitioner's convictions were based upon illegally seized evidence.

At the post-conviction hearing, trial counsel testified about the appeal of Petitioner's convictions on Counts One and Two. At the relevant times, trial counsel was "confident" about Petitioner's appeal, but trial counsel said that he was "drinking his own Kool-Aid and thought [he] would win." Trial counsel could not remember if he had given Petitioner any advice regarding the remaining counts of his indictment, but trial counsel maintained if he did give advice, he "would have told [Petitioner] that the appeal would have been dispositive on the remaining counts." Trial counsel recalled sending a copy of his brief to plea counsel, but he did not remember having any "substantive conversations" with her. However, trial counsel remembered discussing with plea

counsel the issue of retroactive applicability of the federal case law relevant to Petitioner's appeal.

Trial counsel admitted that he signed the agreed order entered by the trial court dismissing Counts One and Two which stated that Petitioner's pleas were "voluntary." Trial counsel said, "I have nothing to base that statement upon, and that was an error. I did not consult with his attorney nor [Petitioner] on whether or not his pleas to Counts [Eleven] and [Twelve] were voluntary. I just assumed that they were." Trial counsel did not consult Petitioner before entering the order.

Petitioner testified regarding his attorney arrangement where trial counsel represented him on the appeal of Counts One and Two while plea counsel represented him on Counts Eleven and Twelve. Petitioner claimed that the District Attorney and the trial court "insisted we go ahead and set two more counts for trial" while his appeal was still pending. Petitioner remembered that a continuance was requested, but he could not remember who made that request. Petitioner recollected that plea counsel never really went over discovery with him and that plea counsel "was pretty much . . . conceding defeat[.]"

On the morning of trial, Petitioner was offered a plea deal. According to Petitioner, plea counsel told him that they were going to lose the trial because the State was going to use the same evidence that it had used in the trial on Counts One and Two and that he was going to lose his appeal. Petitioner explained his reasoning for accepting the plea offer: "I figured when I lose in trial they're going to give me a consecutive sentence. And she said that I'm going to lose my appeal. I figured her being an attorney, she knew more about the system than I did. So . . . I took the deal." Petitioner said, "[J]ailhouse lawyers tell you that nobody ever wins their appeal." Petitioner revealed that he believed "everything is a gamble," and even trial counsel told him that his chances of winning his appeal were "50/50." Petitioner further expounded, "I figured whatever they gave me would be [run] in with the forty-five and I wouldn't have [gotten any] more time, I would just [have] the forty-five years." Petitioner recalled agreeing to an open plea for a sentence that would be concurrent with his sentence in Counts One and Two. When asked about his statements during the plea colloquy, Petitioner responded, "I was just agreeing to whatever. I figured it was a formality . . . to get the little hearing over with. . . . I said yes to whatever she asked . . . just to get it over with and be done with it. I wasn't paying attention to nothing she was saying."

Petitioner had no contact with trial counsel between the date that he entered his pleas and his sentencing hearing. However, Petitioner remembered plea counsel having a conversation with trial counsel. Petitioner never told trial counsel that his pleas were voluntary. Petitioner claimed that he never discussed an appeal of his sentencing with plea counsel after his sentencing hearing. No appeal of Petitioner's sentence was filed.

Plea counsel testified that she had been an attorney at the Public Defender's Office for ten years and that she was very experienced handling criminal cases of various magnitudes. She remembered that Counts One and Two had been severed from the rest of the case, and she represented Petitioner on the remaining counts. She spoke with trial counsel about the history of the case and the appellate issue regarding the GPS tracking device. She noted that she met with Petitioner twice in person and once via video conference. She characterized these meetings as "trial prep visits." Plea counsel recalled filing a motion to continue the trial date until after this Court had ruled on the appeal in Counts One and Two, but that motion was denied. No plea offer was made by the State until the morning of trial. When talking about the plea offer, plea counsel said, "We didn't see this coming[.]"

Plea counsel maintained that she discussed the plea offer with Petitioner and that she explained the concurrent sentence. She said, "It was really a stressful conversation because . . . the appeal was still going on. We didn't know what was going to happen with that." Plea counsel was concerned that Petitioner would receive a consecutive sentence if they were to lose at trial. Plea counsel conveyed to Petitioner that she "did not know what was going to happen with his appeal and he could very well lose[.]" She thought that Petitioner might eventually get out of jail with a concurrent sentence. Plea counsel advised Petitioner to take the plea agreement. According to plea counsel, the entire discussion about the plea agreement lasted about twenty minutes. Plea counsel could not remember, nor did she note, a conversation with Petitioner about appealing his sentence after the pleas and sentencing hearing. However, it was her practice to have such a conversation.

The post-conviction court denied relief on Petitioner's ineffective assistance of counsel claims and Petitioner's claim that his convictions were based upon illegally seized evidence. In its written order, the post-conviction court found that Petitioner failed to establish that his trial counsel was ineffective or that he was prejudiced by any alleged deficiency and that Petitioner's guilty pleas were knowing and voluntary. However, the post-conviction court granted Petitioner a delayed appeal of his sentence, while holding his post-conviction proceedings in abeyance, and this Court upheld his sentence in *State v. Jerry Brandon Phifer*, No. M2016-00227-CCA-R3-CD, 2016 WL 6311802 (Tenn. Crim. App. Oct. 28, 2016) *perm. app. denied* (Tenn. Dec. 15, 2016). Petitioner declined to raise any more post-conviction claims stemming from the appeal of his sentence and proceeded with this appeal.

*Analysis*

Petitioner argues that he received ineffective assistance of trial counsel when plea counsel failed to investigate his case and failed to discuss an appeal of Petitioner's

sentence with him. Petitioner also argues that he received ineffective assistance of counsel when trial counsel signed the order stating that Petitioner's pleas were voluntary. Additionally, Petitioner argues that his pleas were the product of evidence obtained in violation of the Fourth Amendment of the United States Constitution. The State responds that Petitioner received effective assistance from both of his attorneys. The State also argues that Petitioner's pleas were knowing and voluntary, and thus Petitioner has waived his Fourth Amendment claim. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

## I. Ineffective Assistance of Counsel

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P.

13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the Strickland test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). Because Petitioner's ineffective assistance of counsel claims relate to his guilty pleas, in order to show prejudice he "must prove that counsel performed deficiently and 'there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Hill*, 474 U.S. at 58. (quoting *Strickland*, 466 U.S. at 691).

Petitioner points to the American Bar Association Standards for Criminal Justice from 1993 that our supreme court found helpful in *Grindstaff v. State* in an effort to show the standard to which criminal defense attorneys should be held. That standard states that "[u]nder no circumstances should defense counsel recommend to a defendant acceptance

of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial." *Grindstaff*, 297 S.W.3d at 220 (citing ABA Standards for Criminal Justice: Prosecution and Defense Function (3d ed. 1993)). The evidence accredited by the post-conviction court showed that plea counsel conducted some investigation of Petitioner's appeal of Counts One and Two. She spoke with trial counsel about the history of the case and the appellate issue regarding the GPS tracking device. Trial counsel remembered sending plea counsel a copy of his brief and discussing the issue of retroactive applicability of federal case law with her. Plea counsel's conclusion about the success of the appeal was evidenced by her advice to Petitioner that she "did not know what was going to happen with his appeal and he could very well lose." While plea counsel's assessment of the likelihood of Petitioner's appeal being successful was ultimately incorrect, there was no evidence presented that she conducted an inadequate investigation which rises to the level of deficiency. The burden is on the Petitioner to show that plea counsel's investigation was constitutionally deficient, and he has not made an adequate showing.

Petitioner also claims that he received ineffective assistance of counsel when plea counsel failed to discuss an appeal of his sentence with him. However, Petitioner admits in his brief that plea counsel's failure to discuss an appeal of his sentence "had no impact on [Petitioner's] guilty plea[s]." Once a defendant enters a guilty plea, the effectiveness of counsel is only relevant to the extent that it affects the voluntariness of the plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Even if plea counsel's actions affected Petitioner's decision to plead guilty, there would be no prejudice because the post-conviction court granted Petitioner a delayed appeal of his sentence, and this Court heard his argument and ruled upon his claims in *Jerry Brandon Phifer*, 2016 WL 6311802.

Petitioner claims that trial counsel provided ineffective assistance of counsel when he signed the order characterizing Petitioner's pleas as voluntary. First, we should mention that trial counsel ceased being Petitioner's counsel with regard to Counts Eleven and Twelve at the point that plea counsel was appointed to represent him on those same counts. This occurred long before trial counsel signed the order in question. However, even if trial counsel's actions were within the ambit of Petitioner's ineffective assistance of counsel claims in this case, Petitioner cannot show that trial counsel's actions affected the actual voluntariness of his guilty pleas. The order was signed by trial counsel after Petitioner pled guilty. Trial counsel's actions are not relevant to the voluntariness of Petitioner's guilty pleas. *See Hill*, 474 U.S. at 56. Because the deficiencies by trial counsel alleged by Petitioner occurred after his pleas, Petitioner has failed to show that but for trial counsel's actions, he would not have pled guilty and would have insisted on going to trial.

When it comes to Petitioner's ineffective assistance of counsel claims, the evidence presented at the post-conviction hearing does not preponderate against the post-

conviction court's findings. Therefore, Petitioner has failed to prove his claims by clear and convincing evidence and is not entitled to relief.

## II. Fourth Amendment Claim

"The entry of a plea of guilty, which is voluntarily, understandingly, and intelligently entered, constitutes a waiver of all procedural and constitutional defects in the proceedings that occurred prior to the entry of the plea." *State v. Turner*, 919 S.W.2d 346, 354 (Tenn. Crim. App. 1995) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Issues that are waived upon the entry of a guilty plea include claims of unreasonable searches or seizures. *See id.* (citing *Ingram v. Henderson*, 454 S.W.2d 167, 170 (1970)).

"To pass constitutional muster . . . a guilty plea must be entered knowingly, voluntarily, and intelligently." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010) (citations omitted). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)). "[T]he standard of inquiry is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ward*, 315 S.W.3d at 465 (citation and internal quotation marks omitted). "If the accused is to make a 'voluntary and intelligent choice among the alternative courses of action' available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices. *Parham v. State*, 885 S.W.2d 375, 384 (Tenn. Crim. App. 1994) (footnotes omitted). When assessing the validity of a guilty plea, a court must look at the totality of the circumstances, including such factors as:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Powers v. State*, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting *Blankenship*, 858 S.W.2d at 904).

Taking the factors in turn, Petitioner's intelligence is evidenced by the fact that he has two associate's degrees. He is familiar with criminal proceedings because he had just gone through a complete trial and was in the process of going through an appeal at the

time that he entered his pleas. His familiarity with criminal proceedings is further evidenced by the trial court's finding that Petitioner was a career offender. As discussed above, Petitioner was represented by competent counsel and plea counsel adequately explained that Petitioner had two options: go to trial and gamble on winning his appeal, or plead guilty and ensure that he received a concurrent sentence. The trial court repeatedly questioned Petitioner to make sure that he understood that he was giving up his right to appeal his convictions in Counts Eleven and Twelve and that they would remain in place regardless of what happened on the appeal of Counts One and Two. Petitioner did not just say "yes" to everything as he claims. At the plea colloquy, Petitioner stated, "I understand I can't appeal this right here." Petitioner explained at the post-conviction hearing that he chose to take the plea deal because he was afraid of receiving consecutive sentences if he were convicted at trial. Petitioner voluntarily, understandingly, and knowingly pled guilty in Counts Eleven and Twelve and chose not to incur the risk of consecutive sentencing by going to trial. In this particular case, taking the risk would have paid off for the Petitioner, but that does invalidate his choice not to gamble. Because Petitioner voluntarily, understandingly, and intelligently entered his guilty pleas, his Fourth Amendment claim is waived.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE